# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

CLARENCE EDWARD SCHEEL                                                           PLAINTIFF

VS.                                                    CIVIL ACTION NO. 1:09cv319-HSO-JMR

SHERIFF DAVID ALLISON                                                            DEFENDANT

## REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [18-1] to Dismiss, or in the Alternative for Summary Judgement and Qualified Immunity filed on behalf of the Defendant, David Allison. To date, Plaintiff has not filed a Response in Opposition. Defendant Allison's Motion is accompanied by a Memorandum [20-1] in Support thereof. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Defendant Allison's Motion to Dismiss or in the Alternative for Summary Judgement and Qualified Immunity be granted and all claims against Defendant Allison be dismissed with prejudice.

## FACTS:

Plaintiff, Clarence Scheel, was arrested by the Hancock County Sheriff's Department on July 10, 2008, and charged with sexual battery, two counts of touching a child for lustful purposes, disorderly conduct, and no automobile insurance. (Ex. "B" Attach. [22-1] Mot. Summ. J. 43.) Plaintiff was subsequently booked into the Pearl River County Jail ("PRCJ") to await proceedings on his pending charges. The Hancock County grand jury refused to return a true bill of indictment against Plaintiff for the sexual battery or touching a child for lustful purposes charges. *Id.* at 43, 67. Plaintiff was released on May 29, 2009. *Id.* Three days prior to his release, on May 26, 2009,

Plaintiff, filed this *pro se* § 1983 action against Sheriff David Allison, and alleges that he suffered violations of his civil rights while being held as a pretrial detainee in the PRCJ.

In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions of confinement and denied adequate medical treatment during his detention at the PRCJ. Specifically, Plaintiff alleges that the food is served cold, that the water is warm and brown, that yard call is infrequent, that there is black mold, that water drips from the ceilings in the shower and bathroom, that there are exposed wires from a light fixture in the shower, that his mail is mishandled and legal mail is opened, and that there is a lack of pest control. Also, Plaintiff alleges that he was denied adequate medical care and subjected to verbal abuse by medical and correctional staff.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695

F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section

1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker

actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

In his Motion [18-1] for Summary Judgment, Defendant Allison asserts that Plaintiff has failed to exhaust his administrative remedies, and therefore his section 1983 claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Alternatively, Defendant Allison contends that Plaintiff's official capacity claims against him are, in reality, claims against Pearl River County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Defendant Allison also asserts that Plaintiff's individual capacity claims are subject to a qualified immunity defense because not only has Plaintiff failed to sufficiently establish that a violation of his Constitutional rights has occurred, but Defendant Allison's conduct was objectively reasonable and he was acting within the scope of his discretionary authority at all relevant times.

Plaintiff's complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA

requires the plaintiff "to exhaust 'available' 'remedies,' whatever they may be. The failure to do so prevents him from pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "In *Booth v. Churner*, the Supreme Court decided that Congress intended a prisoner to invoke 'such administrative remedies as are available' in the prison, without regard to whether the grievance procedure affords money damage relief, before he may file suit contesting prison conditions in federal court." *Wright*, 260 F.3d at 358 (citation omitted). The Supreme Court's finding was further summed up in a footnote: "Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Booth v. Churner*, 532 U.S. 731, 741, n. 6. (2001). The district court is not required to determine if the petitioner made a good faith effort to pursue his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)(overruled on other grounds).

The Court notes that Plaintiff's inmate file does not contain one inmate grievance form concerning any of the above allegations. (*See* Ex. "B" Attach. [22-1] Def.'s Mot.) The Court further notes that Plaintiff's file contains only two (2) inmate grievance forms submitted by Plaintiff pertaining to receipt of his legal paperwork - not legal mail. *Id.* at 63, 64. Therefore, upon a thorough review of the record and the pleadings before the Court, the Court finds that Plaintiff has failed to avail himself of the available administrative remedies provided by the PRCJ. Accordingly, this Court finds that the instant 42 U.S.C. § 1983 claim should be dismissed for Plaintiff's failure to meet the PLRA's administrative remedies exhaustion requirement.

Although Plaintiff' failure to exhaust available administrative remedies is dispositive as to his section 1983 claims, the Court will, out of an abundance of caution, proceed to review Plaintiff's substantive claims against Defendant Allison in both his official and individual capacities.

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment

Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton*, 74 F.3d at 103. "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally

---

[1] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

## I. Conditions of Confinement:

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated as a pretrial detainee within the PRCJ, and that Defendant Allison is officially liable because he failed to remedy the situation. Plaintiff's official capacity claims against Defendant Allison are, in reality, claims against the office which he occupied at the time of the alleged incidents and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability; that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the

official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff's allegations include that he was subjected to black mold, cold food, warm brown water, infrequent or no yard calls, water dripping from the ceilings in the shower and bathroom, no pest control, wires exposed from a light fixture in the shower, and mishandling of mail including the opening of legal mail. However, other than the above mentioned allegations of unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against Pearl River County. Accordingly, Defendant Allison is entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the PRCJ.

Additionally, the Court notes that Plaintiff does not specify whether his claims are against Defendant Allison in his individual capacity, his official capacity, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official capacities. *See Williams v. Love*, 2006 WL 1581908, *5 (S.D.Tex. 2006). However, because Defendant Allison is a law enforcement official, he may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to

be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendant Allison, Plaintiff must offer proof that the conditions at the PRCJ were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegations concerning the cleanliness of the PRCJ do not rise to the level of constitutional violations. Plaintiff alleges that black mold is present in the zones, that water drips from the ceilings in the shower and bathroom, that there are exposed wires from a light fixture in the shower, and that there is a lack of pest control. (*See* Pl.'s Compl. [1-1].) Despite these allegations, the Court notes that Plaintiff offers no evidence that Defendant Allison maintains the facility in an unsanitary fashion as a form of punishment. Also, Plaintiff fails to even allege that Defendant Allison was even aware of these alleged conditions. Plaintiff's inmate file is devoid of any grievance concerning the above mentioned allegations. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff's allegations concerning the quality of the food and water served at the PRCJ also fails to state a constitutional claim. Plaintiff's complaint is that the food is regularly served below proper temperature and that the drinking water is warm and not clean. However, Plaintiff has offered no evidence or even made an allegation that the food and water at the PRCJ are served in the alleged manner as a form of punishment. Plaintiff offers nothing more than the stated assertions in his complaint. Although the food is clearly not to Plaintiff's liking, "there is . . . a *de minimis* level of

imposition with which the Constitution is not concerned." *Id*. These issues do not rise to an actionable claim.

Plaintiff alleges that "yard calls" or recreation periods are infrequent or even non-existent on occasion. (*See* Pl.'s Compl. [1-1].) However, the Court finds that Plaintiff's contention is not supported by any evidence presented. The Court notes that Plaintiff has presented no direct evidence to indicate that he was ever denied a recreation period as a form of punishment. Further, Plaintiff has presented no evidence to establish that the alleged infrequency of his yard calls were not reasonably related to a legitimate penological interest such as assuring inmate security. This ambiguous allegation does not rise to an actionable claim.

Plaintiff's remaining allegation concerning the conditions of confinement at the PRCJ is that his mail is not delivered in a timely fashion and that his legal mail is sometimes opened. (*See* Pl.'s Compl. [1-1].) Plaintiff does not, however, claim that his ability to prepare or transmit necessary legal documents has been affected by this alleged opening and inspection. Nor does he present any evidence that his mail has been censored or even allege that the facility's alleged conditions prejudiced or harmed his pursuit of this or any legal matter. The Fifth Circuit has held that "the violation of the prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993). Accordingly, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

After a review of the evidence, the Court finds that Defendant Allison is entitled to qualified immunity because Plaintiff has failed to create a genuine issue as to whether the conditions of his confinement were imposed as a form of punishment. The record is bereft of any facts tending to indicate that Defendant Allison was actually aware of the allegedly unconstitutional conditions at

the PRCJ. Furthermore, Plaintiff has failed to allege an express intent on the part of Defendant Allison to subject him to the allegedly unconstitutional conditions as a measure of punishment.

Assuming, arguendo, that Plaintiff's allegations are sufficient to create an issue as to whether he suffered a violation of his constitutional rights, the Court finds that Defendant Allison is still entitled to qualified immunity because his conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). Furthermore, the Court finds that Plaintiff's allegations do not indicate any objectively unreasonable conduct on behalf of Defendant Allison, as Plaintiff has failed to present any evidence that Defendant Allison was capable of operating the facility in a different manner. Accordingly, the Court finds that Plaintiff's conditions of confinement claims against Defendant Allison do not rise to actionable claims and must be dismissed.

## II. Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the PRCJ, Plaintiff also alleges that Defendant Allison is liable for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights. As stated earlier, Plaintiff does not specify whether his claims against Defendant Allison are in his official capacity, his individual capacity, or both. Because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official capacities. *See Gagne*, 805 F.2d at 559.

In his Complaint, Plaintiff alleges that he did not receive proper medical care while incarcerated at the PRCJ. Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three

requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that he was not provided proper medical care. Specifically, Plaintiff states he "needed 7.5mg of Vicodin for chronic back pains, 2mg of Xanax for anxiety and stress, 350 mg of Soma for back spasms." (*See* Pl.'s Compl. [1-1].) A review of Plaintiff's inmate medical file shows that Plaintiff's spine was x-rayed following his complaints of back pain and he was prescribed Ibuprofen, and he was prescribed Prozac following his complaints of depression and mental problems. (*See* Ex. "A" Attach. [22-1] Def.'s Mot.) Furthermore, his medical file reveals that all of his medical requests and sick call slips concerning constipation, depression and mental problems, trouble sleeping, acid reflux, fever, back pain, and toothaches were responded to. *Id.* Regardless, other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claims against Defendant Allison.

To the extent, Plaintiff's Complaint also seeks liability against Defendant Allison in his individual capacity, Defendant Allison has pled the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an

episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Allison contends, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Allison was deliberately indifferent to his serious medical needs. Plaintiff's claim is that he was not receiving the proper medication for back pain, anxiety and stress. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Allison was deliberately indifferent to his serious medical needs. There is no evidence indicating that Plaintiff was ever denied any medical request, and certainly no evidence that Defendant Allison was aware that Plaintiff was in need of treatment for a serious medical need. Therefore, Plaintiff has not alleged sufficient facts to permit an inference

that Defendant Allison was aware of a serious risk to Plaintiff's health. Furthermore, the evidence of record indicates that all of Plaintiff's sick call requests were responded to by the PRCJ medical staff. (*See* Ex. "A" Attach. [22-1] Def.'s Mot.) On July 15, 2008, Plaintiff complained of psychological problems and the PRCJ medical staff requested his previous medical records. *Id.* In August 2008, Plaintiff complained of a toothache and an appointment with a dentist, Dr. Jones, was scheduled for August 26, 2008. *Id.* Following a tooth extraction on September 17, 2008, Plaintiff was prescribed 800mg of Motrin. *Id.* On September 25, 2008, Plaintiff complained of nausea and a "bad trip" feeling. He was placed in medical for observation and provided 25mg of Phenergan. *Id.* Plaintiff complained of back pain on October 28, 2008, and three days later he was taken for an x-ray of his spine. *Id.* Plaintiff was prescribed 400mg of Ibuprofen. *Id.* On November 28, 2008, Plaintiff was examined by PRCJ medical staff for his complaints of fever and sinus pain. *Id.* Plaintiff was also seen by the PRCJ medical staff on January 26, 2009, regarding his complaint that he has trouble sleeping. *Id.* On January 27, 2009, Plaintiff was taken to a dental appointment regarding a tooth extraction and was prescribed 800mg of Motrin. *Id.* On March 1, 2009, Plaintiff was prescribed 150mg tablets of Zantac for his complaints of acid reflux. *Id.* On May 12, 2009, Plaintiff was started on Prozac following his complaints of depression. *Id.* On May 25, 2009, Plaintiff complained of constipation and trouble sleeping, however, he was released from prison before the medical staff could review his complaints. (*See* Exs. "A," "B" Attach. [22-1] Def.'s Mot.) The available evidence indicates that on several occasions Plaintiff received medical attention commensurate with his needs. Furthermore, the Court notes that Plaintiff's medical file indicates that on several occasions he refused medication from the medical staff. (*See* Ex. "A" Attach. [22-1] Def.'s Mot.) Regardless, Plaintiff's allegation of improper medical care found in his Complaint is at best a disagreement with the medical treatment he received while incarcerated at the PRCJ,

however, disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). This issue does not rise to an actionable claim.

Plaintiff also makes a general assertion that "we also have staph infection due to unsanitary and improper air ventilation (vent clogged with dust)." (*See* Pl.'s Compl. [1-1].) Defendant Allison notes, however, that Plaintiff does not allege that he was denied treatment for a staph infection. Also, Plaintiff's medical file does not reveal any sick call request or grievance regarding a staph infection, nor is there any evidence that Plaintiff ever received a staph infection while incarcerated at the PRCJ. (*See* Exs. "A," "B" Attach. [22-1] Def.'s Mot.) Plaintiff's medical file does reflect that he received medical care commensurate with his needs. Therefore, this Court finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

Lastly, Plaintiff alleges in his Complaint that he was verbally abused by medical and correctional staff at the PRCJ. However, Plaintiff has not alleged that he was ever injured by any PRCJ staff. Furthermore, the Fifth Circuit has held that freestanding "claims of verbal abuse are not actionable under § 1983." *See Calhoun v. Hargrove*. 312 F.3d 730, 734 (5th Cir. 2002). Therefore, the Court finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

In the case at hand, the Court finds that Plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of Defendant Allison. Thus, the Court finds that the Defendant Allison is entitled to qualified immunity.

The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act,

MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## RECOMMENDATION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendant Allison violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the PRCJ. Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by Defendant Allison for a punitive purpose. Further, Plaintiff's allegation that he was denied adequate medical care does not rise to the level of a constitutional violation. Accordingly, the Court recommends that Defendant Allison is entitled to summary judgment, and Plaintiff's official and individual capacity claims against Defendant Allison should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on

the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED**, this the ___2nd___ day of June, 2010.

                                      *s/ John M. Roper, Sr.*
                            CHIEF UNITED STATES MAGISTRATE JUDGE